FILED
2025 OCT 8 AM 8:58
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT DISTRICT OF UTAH

ROSS LOGAN,
Plaintiff,

v.

LVNV FUNDING, LLC;
RESURGENT CAPITAL SERVICES, L.P.;
JOHNSON MARK LLC,
Defendants.

Case No: 2:25-cv-00848-JCB

FIRST AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF
(FDCPA, STATE LAW, AND RICO)

JURY DEMAND

---

INTRODUCTION

This action arises from Defendants' systematic manipulation of debt-collection procedures in Utah and Nevada.

Defendants engaged in four coordinated schemes: (a) contract manipulation—invoking Nevada law when advantageous while ignoring Nevada's licensing obligations and litigating despite a mandatory arbitration clause; (b) forum manipulation—pursuing parallel litigation and arbitration to maximize procedural advantage while forcing Plaintiff to prosecute arbitration as claimant; (c) law manipulation—sending unlicensed dunning letters, issuing summons approximately 139 days before filing, and filing false service certificates to exploit a pre-scheduled hearing without actual notice (Ex. N; Ex. H-1/H-2); and (d) enterprise coordination—operating through an integrated RICO enterprise using interstate communications to execute fraudulent schemes affecting consumers nationwide.

Plaintiff does not challenge the merits of any underlying debt but seeks redress for Defendants' abuse of process and violation of federal and state law.

Plaintiff seeks damages, declaratory relief, and injunctive relief under the FDCPA, Utah Consumer Sales Practices Act, Nevada deceptive trade practices statutes, and RICO.

---

JURISDICTION & VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 (FDCPA and RICO claims) and supplemental jurisdiction under 28 U.S.C. § 1367 over state-law claims arising from the same nucleus of operative fact.

2. This Court has RICO jurisdiction under 18 U.S.C. § 1964(c).

3. Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and substantial events occurred here, and under 18 U.S.C. § 1965(a)-(b) because Defendants transact affairs in this District and nationwide service is authorized for RICO actions.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

5. This Court has personal jurisdiction over all Defendants because they purposefully directed debt-collection litigation and arbitration conduct toward Utah residents, creating substantial connections with Utah:

   (a) LVNV Funding, LLC filed two lawsuits against Plaintiff in Utah state courts (Case Nos. 249105258 and 249105685), invoking Utah's judicial system to collect debts;

   (b) LVNV caused service of process on Plaintiff at a Utah address on September 10, 2024 and October 7, 2024;

   (c) LVNV, through its agent Resurgent Capital Services, directed Johnson Mark LLC to initiate and prosecute Utah litigation on LVNV's behalf as the named plaintiff;

   (d) Resurgent Capital Services employees W. Paige Hale and Sara Stephens created, executed, and filed sworn affidavits in Utah-based AAA arbitration proceedings on September 22, 2025 (Ex. R; Ex. S);

   (e) LVNV and Resurgent participated through counsel Peter Richins in AAA arbitration proceedings arising from the Utah lawsuits, including a September 10, 2025 preliminary hearing;

   (f) Defendants sent collection communications to Plaintiff's Utah address;

   (g) LVNV expressly invoked Utah law and Utah courts as the forum for resolving disputes with Plaintiff by filing suit here rather than in Nevada (where the contract was governed) or in Defendants' home states;

   (h) These contacts were not random or fortuitous but result from Defendants' deliberate decision to invoke Utah's judicial system to collect debts from Utah residents.

6. Personal jurisdiction is proper under the "purposeful availment" prong of International Shoe Co. v. Washington, 326 U.S. 310 (1945), and Utah's long-arm statute, Utah Code § 78B-3-205. Defendants cannot invoke Utah courts as plaintiffs while simultaneously claiming insufficient contacts to be sued here as defendants. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

7. All conditions precedent have occurred, been performed, or are excused.

8. Plaintiff's FDCPA claims are timely to the extent they arise from violations within one year of filing this action on October 5, 2025, including the September 2025 false service certificates; earlier conduct is pled as background and as RICO predicates.

9. All RICO claims are timely. The four-year statute of limitations accrues upon discovery of injury and its cause. Rotella v. Wood, 528 U.S. 549, 555 (2000). Plaintiff discovered certain predicate acts (including February 20, 2024 dunning letter and March 25, 2024 validation letter) only when Defendants produced these documents in AAA arbitration discovery in September 2025. The last predicate act occurred September 22, 2025, making all claims timely within four years of discovery and the last act.

10. FDCPA Timeliness/Tolling. To the extent any pre-September 2024 communication is deemed outside the one-year FDCPA statute of limitations, equitable tolling applies due to Defendants' fraudulent concealment of their unlicensed status. Plaintiff could not have discovered the licensing violations because:

   (a) Plaintiff never received the February 20, 2024 dunning letter (Predicate Act 7) or the March 25, 2024 validation letter (Predicate Act 8). Both letters were sent to DMB Financial in Beverly, Massachusetts—not to Plaintiff at his Utah address. Plaintiff had no knowledge these communications existed until Defendants produced them in AAA arbitration discovery in September 2025;

   (b) Defendants produced no certified mail receipts, return receipts, or proof of actual delivery for either letter to Plaintiff's address;

   (c) Because Plaintiff was unaware these pre-suit letters existed, he could not investigate their compliance with FDCPA or Utah licensing requirements until September 2025;

   (d) Even after service of the September 2024 lawsuit, Plaintiff had no reason to suspect earlier violations existed because Defendants' lawsuit appeared facially valid (filed by licensed Utah attorneys on behalf of a plaintiff claiming debt ownership);

   (e) Only when Defendants produced the pre-suit letters in discovery did Plaintiff discover: (i) the letters existed; (ii) both were sent to DMB Financial rather than to Plaintiff; (iii) they were sent while LVNV lacked CCN registration; (iv) both contained potential FDCPA violations;

(f) Utah DFI's CCN database does not allow public historical searches—Plaintiff could not have cross-referenced the letter dates against LVNV's licensing status without first knowing the letters existed and then submitting a formal records request to DFI, which Plaintiff did in September 2025 after discovering the letters' existence (Ex. B-1/B-2);

(g) The one-year FDCPA statute began running only upon Plaintiff's September 2025 discovery of: (1) the existence of the pre-suit communications; (2) DFI records proving LVNV's unlicensed status when those communications were sent; and (3) the violations contained in those communications.

11. Defendants fraudulently concealed these violations by: (1) sending the pre-suit letters to DMB Financial instead of to Plaintiff, ensuring Plaintiff would not receive them; (2) never disclosing the pre-suit letters' existence in their state-court filings; (3) failing to produce them until compelled by arbitration discovery; (4) creating the appearance of lawful collection by filing through licensed Utah counsel; (5) making no disclosure of their unlicensed status in any court filing or communication. Plaintiff exercised reasonable diligence but could not discover violations in communications he did not know existed and that were deliberately sent to the wrong recipient.

---

NO CHALLENGE TO STATE JUDGMENTS; SHAM-LITIGATION EXCEPTION

12. Plaintiff does not seek reversal of any state-court judgment. Claims target Defendants' independent misconduct—unlicensed filing, forum manipulation, and procedural abuse—which falls under the sham-litigation exception to the Noerr-Pennington doctrine. Prof'l Real Estate Investors, Inc. v. Columbia Pictures, 508 U.S. 49, 60–61 (1993).

---

PARTIES

13. Plaintiff Ross Logan resides at 1174 South 200 East, Orem, Utah 84058, and is a "consumer" under 15 U.S.C. § 1692a(3).

14. Defendant LVNV Funding, LLC is a Delaware LLC engaged in purchasing and collecting debts, and a "debt collector" under 15 U.S.C. § 1692a(6).

15. Defendant Resurgent Capital Services, L.P. is LVNV's servicer/agent and a "debt collector."

16. Defendant Johnson Mark LLC is a Utah law firm that prosecuted collections for LVNV while LVNV was unregistered in Utah.

17. Each Defendant acted as agent of the others within actual/apparent authority. All Defendants acted in a common enterprise and are jointly and severally liable. Johnson Mark regularly collects debts owed or due another and is a "debt collector" under 15 U.S.C. § 1692a(6).

18. Johnson Mark LLC is a "person" engaged in trade or commerce under UCSPA. Its attorneys prepared, signed, filed, and prosecuted the lawsuits and certificates described herein. Consistent with Heintz v. Jenkins, 514 U.S. 291 (1995), litigation activities by law-firm debt collectors constitute "debt collection" under the FDCPA.

---

FACTUAL BACKGROUND – CASE 1 (Utah Case No. 249105258 - THE UNLICENSED CASE)

19. LVNV lacked Utah Consumer Credit Notification ("CCN") registration from before September 10, 2024 through September 19, 2024. Both service (September 10, 2024) and filing (September 17, 2024) occurred during this unlicensed period, in violation of Utah Code Title 70C (including §§ 70C-8-201, -202).

20. On September 17, 2024, Defendants filed Case No. 249105258 in Utah's Fourth Judicial District. Service had occurred September 10, 2024 pursuant to a summons issued May 3, 2024—approximately 137 days before any complaint existed. (Ex. D-2; Ex. N.)

21. This irregular sequencing reflects procedural manipulation: Defendants armed themselves with process long before filing, positioning to serve Plaintiff while avoiding contemporaneous judicial oversight.

22. The process server's affidavit was signed September 16, 2024, service occurred September 10, 2024, and the complaint was filed September 17, 2024—within the 10-day filing window permitted when an action is commenced by service under Utah R. Civ. P. 3(a)(2) (as then in effect). The 137-day advance issuance of the May 3 summons, followed by near-deadline service and filing, supports an inference of tactical sequencing to gain procedural advantage. (Ex. D-2; Ex. L; Ex. N.) See also Utah R. Civ. P. 4(c).

23. Johnson Mark attorneys Sean Morrissey and Sean Umipig filed and prosecuted Case No. 249105258 on LVNV's behalf.

24. Utah DFI records obtained September 12, 2025 show LVNV's CCN became effective September 19, 2024. (Ex. B-1/B-2.) At the time of service and filing, LVNV had no CCN registration. NMLS history reflects no Utah authorization prior to September 19, 2024. (Ex. C.)

25. The alleged debt arose from a Credit One Bank cardholder agreement containing Nevada law and AAA arbitration clauses. (Ex. A.)

26. Despite the arbitration clause, LVNV pursued litigation rather than arbitration.

27. While unregistered, LVNV engaged in collection activity: service (September 10, 2024) and complaint filing (September 17, 2024). (Ex. D-2.)

28. Plaintiff repeatedly invoked arbitration rights, but Defendants resisted until Judge Roger Griffin stayed the case for arbitration on May 19, 2025. (Ex. D-2; Ex. E-2.)

29. Following this stay, Plaintiff was required to initiate arbitration to preserve his rights, resulting in AAA Case No. 01-25-0002-6360 being assigned June 13, 2025. (Ex. E-2.) LVNV refused to file, shifting the role of claimant to Plaintiff.

---

 FACTUAL BACKGROUND – CASE 2 (Utah Case No. 249105685 - THE LICENSED CASE)

30. On October 8, 2024, Defendants filed Case No. 249105685 in Utah's Fourth Judicial District. (Ex. D-1.)

31. Johnson Mark attorneys including Sean Morrissey filed the case.

32. According to DFI records, LVNV was registered under the CCN program effective September 19, 2024, and thus was properly licensed when filing this case. (Ex. B-1/B-2.)

33. Service occurred October 7, 2024, and the complaint was filed October 8, 2024—within Rule 3(a)(2)'s 10-day filing window. This sequence is permitted. (Ex. D-1; Ex. K; Ex. M.)

34. The alleged debt arose from the same Credit One Bank Nevada-law contract with arbitration clause. (Ex. A.)

35. Despite the arbitration clause, LVNV initiated litigation rather than arbitration.

36. Plaintiff repeatedly invoked arbitration rights in motions and correspondence throughout 2024–2025.

37. Following the court-ordered stay, Plaintiff—not LVNV—was required to initiate arbitration, despite LVNV being the party seeking to collect.

38. Plaintiff initiated arbitration in May 2025, resulting in AAA Case No. 01-25-0002-6361 being assigned June 13, 2025. (Ex. E-1.)

39. Though LVNV sought to collect, it refused to file with AAA, forcing Plaintiff to prosecute as claimant—improperly reversing roles and shifting arbitration burdens to the consumer. (Ex. E-1/E-2; Ex. O.)

---

PROCEDURAL AMBUSH

40. On September 10, 2025, Defendants filed motions to set aside arbitration in both cases with certificates of service claiming service had been made. (Ex. G-1/G-2; H-1/H-2.)

41. Plaintiff never received either motion. The certificates were knowingly false or made with reckless disregard for truth, depriving Plaintiff of fair notice. (Ex. H-1/H-2.)

42. The September 15, 2025 hearing had been set months earlier by the Court's May 19, 2025 stay order as a status check. Defendants knew of this scheduled hearing. By deliberately filing their motion on September 10, 2025—five days before the hearing and just before a weekend—with false certificates of service and without actually notifying Plaintiff, they weaponized the pre-set hearing date as an ambush device.

43. Plaintiff first discovered the filing through a docket notice on September 12, 2025 (12:30 p.m.). He had fewer than one business day to review the motion, investigate legal issues, and prepare opposition for the September 15 hearing. (Ex. I.)

44. This sequence—filing a motion at the eleventh hour, swearing falsely to service, and exploiting an already-scheduled hearing—deprived Plaintiff of due process and created substantial risk of default or prejudicial ruling.

---

INJURY AND DAMAGES

45. Plaintiff suffered concrete injuries: (a) contract manipulation injuries—Defendants invoked Nevada law when advantageous but ignored Nevada licensing, creating uncertainty and depriving Plaintiff of statutory protections; (b) forum manipulation injuries—Plaintiff was required to initiate and prosecute arbitration despite being defendant in the underlying cases, bearing procedural burdens that traditionally belong to the collecting party; (c) law manipulation injuries—Defendants exploited gaps in Utah registration timing, issued premature summonses, and filed false service certificates, depriving Plaintiff of actual notice and reducing preparation time to less than one business day, forcing Plaintiff to scramble to avoid default (Ex. N; Ex. H-1/H-2; Ex. I.); (d) prolonged exposure to collection stress and uncertainty regarding proper dispute-resolution procedures; (e) emotional distress and consequential damages; and (f) time and effort reasonably expended responding to Defendants' procedural misconduct, including researching arbitration procedures, preparing responses to expedited motions with inadequate notice, and defending against unlicensed collection activity. These injuries were fairly traceable to Defendants' conduct and are redressable by this Court.

---

COUNT I – FDCPA VIOLATIONS

46. Plaintiff realleges and incorporates by reference all prior allegations as though fully set forth herein. Each Defendant—including Johnson Mark LLC—acted as a "debt collector" and is liable directly and vicariously for the violations below. Johnson Mark's attorneys prepared, signed, and filed the challenged pleadings and certificates; those acts are debt-collection conduct under the FDCPA.

47. Unlicensed Collection (§§ 1692e(2)(A), 1692e(10)): Defendants caused service on September 10, 2024, and filed the complaint on September 17, 2024, while LVNV was not CCN-registered (registration effective September 19, 2024). (Ex. B-1/B-2; Ex. D-2.)

48. False Authority (§§ 1692e(2)(A), 1692e(10)): Misrepresenting authority to collect in Utah without proper registration and falsely representing the legal status of the debt collection activity.

49. Validation Notice (§ 1692g): Within five days of the initial communication (including pre-suit dunning letters and/or other initial contacts preceding service), Defendants failed to provide a compliant § 1692g(a) notice, or provided a materially deficient notice. Plaintiff reserves the right to conform dates upon discovery regarding any pre-suit communications.

50. Third-Party Communication (§ 1692c(b)): The February 20, 2024 and March 25, 2024 letters were both sent to DMB Financial in Beverly, Massachusetts rather than to Plaintiff at his Utah address. Section 1692c(b) prohibits debt collectors from communicating with third parties about a consumer's debt except in limited circumstances. By sending debt collection communications containing information about Plaintiff's alleged debts to DMB Financial, Defendants violated § 1692c(b). In the alternative, if the letters to DMB Financial do not constitute "initial communication" under § 1692g triggering validation notice requirements, they constitute unlawful third-party communications under § 1692c(b), as Defendants provided no justification for communicating Plaintiff's debt information to a third party.

51. Attorney Review (§ 1692e(3)): Upon information and belief, certificates and affidavits were filed without meaningful attorney review, as evidenced by boilerplate pleadings, inconsistent dates, and the issuance of a summons on May 3, 2024, approximately 139 days before the complaint filing on September 17, 2024. (Ex. N; Ex. D-2.)

52. Chain of Title Defects (§ 1692e(10)): Upon information and belief, Defendants initiated and prosecuted litigation without possessing admissible proof of assignment or ownership, thereby misrepresenting the legal status of the debt.

53. Procedural Ambush (§§ 1692e, 1692f): Filing motions to set aside arbitration on September 10, 2025 with service certificates averring service that Plaintiff never received, then exploiting a

pre-scheduled hearing on September 15, 2025 with inadequate notice and false service. (Ex. H-1/H-2; G-1/G-2.)

54. The foregoing misrepresentations and omissions were material because they concerned Defendants' legal authority to collect, forum and timing of proceedings, and Plaintiff's statutory rights, and would affect the least sophisticated consumer's decisions and responses. Specifically, the false service certificates (Predicate Acts 3-4) materially impaired Plaintiff's ability to respond to dispositive motions and risked adverse rulings including default or denial of arbitration rights, which would coerce payment to avoid enforcement—directly affecting Plaintiff's decision-making regarding debt payment and dispute resolution. Misrepresentations regarding licensing status and authority to collect would affect a consumer's willingness to pay or dispute a debt, as unlicensed collection renders judgments void and unenforceable under Utah law.

55. Defendants' violations were not bona fide errors notwithstanding maintenance of procedures reasonably adapted to avoid such errors. On information and belief, Defendants lack written procedures reasonably adapted to ensure CCN compliance before filing, defeating any bona-fide-error defense. See 15 U.S.C. § 1692k(c).

56. Plaintiff seeks actual damages, statutory damages up to $1,000 per action under 15 U.S.C. § 1692k(a)(2)(A), and attorney's fees and costs if represented by counsel under 15 U.S.C. § 1692k(a)(3).

---

COUNT II – DECLARATORY JUDGMENT (ARBITRATION WAIVER)

57. Plaintiff realleges and incorporates by reference all prior allegations.

58. Defendants waived arbitration by: (a) repeatedly litigating despite the contractual requirement; (b) resisting Plaintiff's arbitration demands; (c) shifting to arbitration only when compelled; (d) requiring Plaintiff to initiate and prosecute arbitration as claimant; and (e) filing motions to set aside arbitration after agreeing to proceed. Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1712–14 (2022). (Ex. E-1/E-2; G-1/G-2.)

59. Their procedural ambush tactics further demonstrate conduct inconsistent with good-faith dispute resolution. (Ex. H-1/H-2; I.)

60. Plaintiff seeks a declaration that Defendants waived arbitration; alternatively, an order requiring Defendants to prosecute any arbitration as claimant and advance all fees.

---

COUNT III – UTAH UCSPA VIOLATIONS

61. Plaintiff realleges and incorporates by reference all prior allegations.

62. Filing and prosecuting Case No. 249105258 while not CCN-registered was deceptive and unconscionable under Utah Code § 13-11-4(1). Debt-collection activities, including litigation by a debt-collector law firm, are "trade or commerce" under the UCSPA.

63. Filing false service certificates and exploiting pre-scheduled hearings with inadequate notice also violated UCSPA § 13-11-4, as such tactics knowingly took advantage of procedural rules to deprive Plaintiff of fair opportunity to defend. (Ex. H-1/H-2.) The litigation privilege does not immunize these acts because:

   (a) The privilege does not protect fraud on the court or false certificates filed to obtain procedural advantage. Young v. Export Lines, Inc., 417 F.2d 967, 969 (5th Cir. 1969);

   (b) UCSPA creates an independent statutory violation for deceptive trade practices, which includes false statements in commercial debt collection regardless of litigation context;

   (c) Filing suit while unlicensed is a regulatory violation that precedes and is independent from any privileged litigation conduct—the privilege does not protect the unlawful commencement of litigation itself;

   (d) Utah applies a fraud-on-the-court exception to litigation privilege. DeBry v. Godbe, 1999 UT 111, ¶27.

64. These deceptive acts are not immunized by litigation privilege because they constitute statutory consumer-protection violations and false statements in trade or commerce.

65. Plaintiff seeks actual damages or up to $2,000 per violation, and for willful violations enhanced damages up to three times actual damages, injunctive relief under § 13-11-19(1), and attorney's fees and costs under § 13-11-19(5). Each discrete act—including the May 3, 2024 pre-filing issuance of summons, September 10, 2024 service while unregistered, September 17, 2024 filing while unregistered, filing/using defective service certificates, and noticing hearings without actual notice—constitutes a separate violation under Utah Code § 13-11-19(2). Defendants' conduct was knowing and willful.

---

COUNT IV – ABUSE OF PROCESS

66. Plaintiff realleges and incorporates by reference all prior allegations.

67. Defendants initiated legal proceedings in Utah state court (Case Nos. 249105258 and 249105685).

68. Defendants had an ulterior purpose improper and not within the legitimate scope of process: (a) collecting debts while lacking required Utah CCN registration; (b) avoiding arbitration obligations; (c) shifting arbitration initiation costs to Plaintiff through systematic manipulation; (d) obtaining procedural advantages through pre-filing process issuance and false service claims; and (e) evading Nevada licensing requirements while invoking Nevada's choice-of-law provision when advantageous.

69. Defendants committed improper acts in use of process: (a) filing Case No. 249105258 while lacking required CCN registration; (b) issuing summons May 3, 2024, approximately 137 days before filing complaint; (c) filing false service certificates on September 10, 2025, then exploiting a pre-scheduled hearing with less than one business day's actual notice; (d) opposing arbitration then refusing to initiate after being compelled; and (e) engaging in systematic procedural manipulation across two parallel cases.

70. Defendants' conduct constituted willful acts in use of process in an improper manner. These acts satisfy the elements of abuse of process under Utah law: use of process primarily to accomplish an improper purpose, plus a willful act not proper in the regular conduct of the proceeding.

71. As a proximate result, Plaintiff suffered damages including costs defending improper proceedings, emergency response costs ($500), forced arbitration initiation costs, emotional distress, and investigation costs.

72. The litigation privilege does not bar this claim because:

   (a) Abuse of process is not defamation—it challenges the ulterior purpose and improper use of process, not the truth of statements made;

   (b) The privilege does not protect filing suit while operating in violation of mandatory licensing statutes (Utah Code Title 70C, including §§ 70C-8-201, -202);

   (c) Pre-filing issuance of summons (May 3, 2024, approximately 139 days before filing) occurred outside the scope of any judicial proceeding and is not privileged conduct;

   (d) False certificates of service constitute fraud on the court, which falls outside litigation privilege. Levine v. Bayne, Snell & Krause, Ltd., 2003 UT App 88;

   (e) Systematic evasion of licensing requirements across multiple jurisdictions is commercial conduct, not protected petitioning activity.

73. Defendants' conduct exceeded legitimate litigation activity by involving unlicensed collection in violation of Utah Code Title 70C (including §§ 70C-8-201, -202), pre-filing process issuance, false certificates of service, and systematic evasion of licensing requirements.

74. Plaintiff seeks compensatory damages, punitive damages for willful misconduct, and attorney's fees and costs.

---

COUNT V – NEVADA DTPA / COLLECTION VIOLATIONS

75. Plaintiff realleges and incorporates by reference all prior allegations.

76. The Credit One cardholder agreement contains a Nevada choice-of-law clause and mandates AAA arbitration governed by Nevada law. (Ex. A.) Defendants expressly invoked and agreed to Nevada law's application in arbitration proceedings, as evidenced by the AAA Preliminary Hearing Report stating "Nevada law will be applied substantively to this arbitration." (Ex. O.)

77. By electing to sue and arbitrate under a Nevada-governed agreement—and by affirmatively invoking Nevada substantive law before AAA—Defendants chose remedies under Nevada law and submitted to Nevada's consumer-protection framework. Plaintiff does not seek extraterritorial enforcement; rather, Defendants' election to proceed under Nevada-governed agreement and to invoke Nevada law in AAA proceedings requires compliance with Nevada consumer-protection statutes for collection activities under that contract.

78. Defendants' business operations are directed from South Carolina (Resurgent) and California (LVNV); none are domiciled or licensed in Nevada. This lack of Nevada presence, combined with invocation of Nevada law for collection on Nevada-governed accounts, demonstrates selective invocation of Nevada law when advantageous while ignoring Nevada's regulatory obligations.

79. Nevada law requires collection-agency licenses. NRS 649.075 mandates licensure; NRS 598.0923(1) makes doing business without required state licenses a deceptive trade practice; and NRS 649.370 provides that any FDCPA violation is a Nevada law violation.

80. Nevada provides private right of action under NRS 41.600 for consumers injured by deceptive trade practices, including unlicensed collection and FDCPA violations.

81. According to Nevada/NMLS records, LVNV did not hold any independent Nevada collection license required by NRS Chapter 649. (Ex. C.) NMLS records show LVNV holds 30 active state licenses, but Nevada is not among them.

82. In the alternative, if the choice-of-law clause is not construed to import Nevada's licensing regime to out-of-state litigation, Plaintiff pleads these Nevada claims under 28 U.S.C. § 1367 and alleges that Defendants' FDCPA violations independently constitute violations of NRS 649.370. These claims arise from Defendants' voluntary election to proceed in AAA under

Nevada substantive law. Defendants expressly agreed that "Nevada law will be applied substantively to this arbitration." (Ex. O.)

83. Plaintiff seeks statutory and actual damages, declaratory relief, injunctive relief, and attorney's fees under NRS 41.600, 598.0923, and 649.370. Plaintiff also seeks punitive damages as permitted by NRS 42.005 based on Defendants' willful and knowing misconduct.

---

COUNT VI – DECLARATORY RELIEF (EXISTENCE/ASSENT TO ARBITRATION AGREEMENT)

84. Plaintiff realleges and incorporates by reference all prior allegations.

85. Defendants cannot prove assent to any arbitration clause under FRE 901/803(6).

86. No E-SIGN-compliant records have been produced. 15 U.S.C. § 7001(c).

87. Plaintiff seeks a declaration that no enforceable contract or arbitration clause exists absent admissible proof. This claim is pled in the alternative to Counts I-V.

---

COUNT VII – VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962(c))

A. Incorporation and Jurisdiction

88. Plaintiff realleges and incorporates by reference all preceding paragraphs.

89. This Court has jurisdiction over RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

90. Venue is proper under 18 U.S.C. § 1965(a) and (b) because Defendants reside, are found, have agents, and transact affairs in this District, and because nationwide service of process is authorized for RICO actions.

B. The RICO Enterprise

91. At all relevant times, Defendants LVNV Funding, LLC, Resurgent Capital Services, L.P., and Johnson Mark LLC constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

92. This enterprise is an association-in-fact consisting of three distinct legal entities with defined roles: LVNV (purchases charged-off debt portfolios and holds legal title); Resurgent (serves as

LVNV's exclusive servicing agent, managing and directing litigation); and Johnson Mark (prosecutes collection lawsuits in Utah courts).

93. The enterprise has a common purpose: to maximize profits from debt collection through systematic use of unlicensed collection activities, fraudulent court filings, and manipulation of arbitration procedures to avoid costs and shift procedural burdens to consumers.

94. The enterprise has ascertainable structure distinct from each Defendant's individual affairs. The three entities coordinate through shared computer systems, integrated communication protocols, unified litigation strategies, and common exhibit preparation. On September 22, 2025, W. Paige Hale, a Resurgent employee, executed affidavits on behalf of LVNV in both of Plaintiff's AAA arbitration proceedings (AAA Case Nos. 01-25-0002-6361 and 01-25-0002-6360). (Ex. R; Ex. S.) Both were notarized by Sara Stephens, another Resurgent employee (confirmed by her July 17, 2025 email, Ex. Q), acting as a South Carolina notary. This coordination—with two Resurgent employees producing and notarizing sworn litigation documents for both parallel arbitration cases on the same day—demonstrates the deeply integrated nature of the enterprise.

95. The enterprise is a separate entity distinct from the pattern of racketeering activity and exists beyond the individual affairs of each Defendant. Each Defendant is a "person" employed by or associated with the enterprise under 18 U.S.C. § 1962(c). The enterprise satisfies Boyle v. United States, 556 U.S. 938 (2009).

96. The enterprise engaged in and affected interstate commerce by: using interstate wire communications including telephone, email, and electronic court filing systems; operating across multiple states with debt portfolios acquired from national banks; participating in AAA proceedings administered from New Jersey; and collecting on debts originated by Credit One Bank, N.A., a national bank whose operations affect interstate commerce.

97. The enterprise has operated continuously from at least 2007 through the present, as demonstrated by the Maryland class action (Finch v. LVNV Funding, LLC) involving 1,590 consumers subjected to unlicensed collection 2007-2016; Consumer Financial Protection Bureau records containing approximately 73 consumer complaints against LVNV filed January 2020-June 2025; PACER federal court records reflecting over 1,200 federal lawsuits naming LVNV and approximately 60 naming Johnson Mark, spanning 2011-2025 across at least 15 federal districts; and Plaintiff's cases (filed September-October 2024, ongoing through present).

98. Each Defendant participated in the operation or management of the enterprise's affairs within the meaning of Reves v. Ernst & Young, 507 U.S. 170 (1993). LVNV directed overall portfolio acquisition and litigation policy; Resurgent supervised day-to-day servicing, data management, and coordination; and Johnson Mark executed the enterprise's litigation strategy through court filings, affidavits, and arbitration communications.

C. Pattern of Racketeering Activity Under 18 U.S.C. § 1961(5)

99. Defendants conducted and participated in the enterprise's affairs through a pattern of racketeering activity within 18 U.S.C. § 1961(5).

100. The pattern consists of multiple acts of wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341), each constituting a separate predicate act of racketeering.

101. Dates are pleaded approximately where reflected by court dockets or exhibits and will be conformed to discovery. Use of the Utah e-filing system and AAA WebFile constitutes transmission by interstate wire; USPS mailings constitute use of the mails. Plaintiff pleads the mail and wire fraud predicates with the particularity required by Fed. R. Civ. P. 9(b), identifying the who, what, when, where, and why for each act below.

The Fraudulent Scheme

102. Defendants devised and executed a scheme to defraud consumers and courts by: filing and prosecuting collection lawsuits while operating without required state licenses in Utah and Nevada; making material false representations to courts by omission regarding licensing status, legal authority to collect, chain of title, and attorney review; manipulating contractual arbitration procedures to force consumers into claimant role, reversing traditional litigation burdens and avoiding arbitration fee obligations; filing false certificates of service to obtain hearings without actual notice; using interstate wire communications and U.S. Mail to execute this scheme; and systematically exploiting Nevada-governed contracts by invoking Nevada law as the legal basis for collection while evading Nevada's licensing requirements.

103. **Interstate Licensing Evasion.** The enterprise systematically exploited Nevada-governed contracts while evading Nevada regulatory compliance. Despite holding collection licenses in 30 states, LVNV conspicuously lacks Nevada licensure (Ex. C)—the very state whose law governs the contracts being enforced and which LVNV expressly invoked in arbitration proceedings (Ex. O). This selective regulatory compliance demonstrates the sophisticated, multi-jurisdictional nature of the fraudulent scheme and distinguishes it from isolated licensing oversights.

Wire Fraud Predicate Acts (18 U.S.C. § 1343)

Predicate Act 1 – Wire Fraud (Unlicensed E-Filing, September 17, 2024)

104. Who/What: Attorneys Sean Morrissey and Sean Umipig of Johnson Mark LLC electronically filed Complaint in Case No. 249105258 via Utah's electronic filing system. (Ex. D-2.)

105. Where: Transmitted electronically via interstate wire communications from Johnson Mark's offices to Utah court system servers.

106. Why False: The e-filed complaint was filed September 17, 2024, two days before LVNV obtained required Utah CCN registration on September 19, 2024. (Ex. B-1/B-2.) The complaint implicitly represented that LVNV had lawful authority to initiate collection litigation in Utah, which was materially false because LVNV lacked required CCN registration at filing.

107. Proximate Cause: The unlawful filing directly compelled Plaintiff to defend an improperly commenced action, causing substantial time, research, and preparation costs to investigate LVNV's licensing status and assert defenses.

Predicate Act 2 – Wire Fraud (Continued E-Filings in Unlicensed Case, October 2024-May 2025)

108. Who/What: Johnson Mark LLC attorneys electronically filed the following specific pleadings via Utah's electronic filing system in Case No. 249105258: (a) October 11, 2024: Motion to Dismiss for Failure to Prosecute; (b) October 27, 2024: Reply to Plaintiff's Opposition to Motion to Dismiss; (c) November 13, 2024: Motion to Dismiss and Response to Discovery Requests; (d) December 2024 through May 19, 2025: Ongoing discovery responses, Rule 26 disclosures, and status updates (specific dates to be conformed to discovery upon production of complete docket).

109. Where: Each document transmitted electronically via Utah court system's electronic filing platform across state lines.

110. Why False: Each electronic filing perpetuated prosecution of a lawsuit unlawfully commenced on September 17, 2024, while LVNV was unlicensed. Although LVNV obtained CCN registration on September 19, 2024, the case remained fundamentally tainted by its unlawful commencement. Each subsequent filing implicitly represented that the underlying action was lawfully initiated and that LVNV possessed legal authority to prosecute the collection claim, which was materially false. Utah law does not permit ratification of unlawfully commenced collection litigation through after-the-fact licensing.

111. Proximate Cause: These filings directly forced Plaintiff to incur ongoing costs responding to discovery requests, preparing oppositions to motions, attending hearings, and defending against an unlawfully commenced collection action over an eight-month period.

Predicate Act 3 – Wire Fraud (False Service Certificate, September 10, 2025, Case No. 249105258)

112. Who/What: Johnson Mark LLC electronically filed Motion to Set Aside Arbitration in Case No. 249105258, accompanied by Certificate of Service executed by attorney Peter Richins representing that the motion had been served upon Plaintiff via email and U.S. Mail on September 10, 2025. (Ex. G-2; Ex. H-2.)

113. Where: E-filed via Utah's electronic court filing system, transmitted across interstate wires.

114. Why False: The Certificate of Service was materially and knowingly false. Plaintiff never received the Motion to Set Aside Arbitration via email or U.S. Mail as certified. Plaintiff first learned of the motion on September 12, 2025, at 12:30 PM via electronic docket notification, providing fewer than one business day to prepare opposition for the September 15 hearing. (Ex. I.)

115. Proximate Cause: The false certificate directly caused Plaintiff to incur $500 in emergency costs preparing opposition under severe time pressure and created substantial risk of default judgment had Plaintiff not discovered the motion through independent docket monitoring.

Predicate Act 4 – Wire Fraud (False Service Certificate, September 10, 2025, Case No. 249105685)

116. Who/What: Johnson Mark LLC electronically filed Motion to Set Aside Arbitration in Case No. 249105685, accompanied by Certificate of Service falsely representing service on Plaintiff via email and U.S. Mail. (Ex. G-1; Ex. H-1.)

117. Where: E-filed via Utah electronic court system across interstate wires.

118. Why False: The Certificate of Service was materially false. Plaintiff never received the motion via the methods certified.

119. Proximate Cause: Same emergency preparation costs and default risk as described in Predicate Act 3.

Predicate Act 5 – Wire Fraud (AAA Arbitration Manipulation, June 13, 2025-September 10, 2025)

120. Who/What: LVNV, through their representatives and Johnson Mark LLC counsel Peter Richins, engaged in electronic communications with American Arbitration Association regarding arbitration proceedings in AAA Case Nos. 01-25-0002-6360 and 01-25-0002-6361, including: June 13, 2025 electronic acceptance/acknowledgment of AAA case assignments (Ex. E-1/E-2); September 10, 2025 participation via Peter Richins in AAA Preliminary Management Hearing conducted electronically, during which LVNV expressly refused to file any counterclaim despite seeking to collect $1,098.86 from Plaintiff (Ex. O); and multiple electronic communications via AAA's WebFile platform and email between June and September 2025 coordinating arbitration proceedings while simultaneously moving to set aside those same proceedings in state court.

121. Where: Electronic communications transmitted via internet from Utah/Nevada to AAA offices in New York and New Jersey, and through AAA's electronic filing platform.

122. Why False: The electronic communications falsely represented Defendants' intention to participate in good faith in contractually-required arbitration. The September 10, 2025

Preliminary Hearing Report reveals the fraud: LVNV expressly agreed that Nevada law would govern the arbitration, participated in setting briefing schedules, and accepted that "LVNV will have the burden of proving the $1,098.86 asserted obligation is owed by Mr. Logan"—yet LVNV categorically refused to file a counterclaim, forcing Plaintiff to prosecute the arbitration as claimant challenging LVNV's debt assertion. (Ex. O.) This role reversal was the culmination of Defendants' fraudulent scheme. These communications falsely implied compliance with contractual arbitration obligations and good-faith dispute resolution while actually subverting the arbitration process through procedural manipulation and attempting to abandon arbitration after forcing Plaintiff to initiate it.

123. Proximate Cause: Defendants' arbitration manipulation directly forced Plaintiff to: (i) assume the role of claimant and prosecute arbitration proceedings that Defendants should have initiated; (ii) prepare and file arbitration demands in both AAA cases; (iii) incur costs preparing for the September 10, 2025 preliminary hearing; (iv) bear the procedural burden of challenging LVNV's debt assertion rather than defending against a properly-filed counterclaim; and (v) expend time and resources navigating the manipulated arbitration process while simultaneously defending against Defendants' motions to set aside the very arbitration they had agreed to participate in.

Predicate Act 6 – Wire Fraud (W. Paige Hale Affidavits via Electronic Filing, September 22, 2025)

124. Who/What: Johnson Mark LLC, on behalf of LVNV and Resurgent, electronically transmitted affidavits executed by W. Paige Hale and notarized by Sara Stephens to AAA in connection with both AAA Case Nos. 01-25-0002-6360 and 01-25-0002-6361 on September 22, 2025.

125. Where: Transmitted electronically via interstate wire communications from Johnson Mark's offices to AAA's offices in New York/New Jersey.

126. Why False: The affidavits implicitly represented independent third-party verification of LVNV's records and claims. In reality, both W. Paige Hale (the affiant) and Sara Stephens (the notary) are Resurgent Capital Services employees (as confirmed by Sara Stephens' July 17, 2025 email to Plaintiff, Ex. Q), and Resurgent is LVNV's exclusive servicing agent and a core member of the enterprise. The affidavits concealed the coordinated, integrated nature of the enterprise by presenting Resurgent employee testimony as if it were independent evidence. The coordination of producing both affidavits on the same day by the same two Resurgent employees for both of Plaintiff's parallel arbitration cases demonstrates the systematic nature of the enterprise's fraudulent scheme. (Ex. R; Ex. S; Ex. Q.)

127. Proximate Cause: The filing of these affidavits directly caused Plaintiff to incur costs investigating the affiants' true relationship to the defendants and preparing responses to what appeared to be independent evidence but was actually created by enterprise members.

Mail Fraud Predicate Acts (18 U.S.C. § 1341)

Predicate Acts 7-8 – Mail Fraud (Dunning and Validation Letters via U.S. Mail, February 20 & March 25, 2024)

128. Who/What: Johnson Mark LLC, acting as debt collector for LVNV and Resurgent, mailed validation letters via U.S. Mail on February 20, 2024, demanding payment of $1,098.86 on account ending in XXXXXXXX-XX-5776, and on March 25, 2024, demanding payment of $1,013.14 on account ending in XXXXXXXX-XX-8860. Both letters were addressed to DMB Financial.

129. Where: Mailed via U.S. Postal Service from Johnson Mark's offices to DMB Financial, 500 Cummings Center, 3rd Floor, Beverly, MA (not to Plaintiff's actual address in Utah).

130. Why False: The validation letters contained multiple material false representations:

    (a) Wrong Recipient—The letters were addressed and mailed to "DMB Financial" in Beverly, Massachusetts, not to Plaintiff. The FDCPA requires validation notices to be sent "to the consumer" (15 U.S.C. § 1692g(a)). By intentionally sending the federally-required validation notices to a third party rather than to Plaintiff, LVNV deprived Plaintiff of the statutory right to dispute the debts within 30 days under 15 U.S.C. § 1692g(b).

    (b) Unlicensed Utah Collection—The letters implicitly represented that LVNV had lawful authority to collect the debts and initiate collection proceedings in Utah. This was materially false because LVNV was not registered under Utah's CCN program at the time. Utah Code Title 70C (including §§ 70C-8-201, -202) requires CCN registration before engaging in collection activities in Utah. LVNV did not obtain CCN registration until September 19, 2024—approximately seven months after sending these letters.

    (c) Unlicensed Nevada Collection—The letters asserted collection rights under Nevada-governed contracts (Ex. A) while LVNV lacked Nevada collection agency licensure (Ex. C), despite LVNV expressly agreeing "Nevada law will be applied substantively" in subsequent arbitration (Ex. O). By invoking Nevada law as the legal basis for collection while evading Nevada's licensing requirements under NRS 649.075, LVNV materially misrepresented its authority to collect under the Nevada-governed contracts. This multi-jurisdictional licensing evasion—holding 30 state licenses but conspicuously lacking licenses in both Utah and Nevada—demonstrates the systematic nature of the enterprise's fraudulent scheme.

131. Proximate Cause: The mailing of these validation letters to the wrong recipient directly caused Plaintiff to suffer multiple injuries: (i) deprivation of the statutory right to dispute the debts within 30 days, forcing Plaintiff to defend against the debts without proper notice; (ii) costs incurred investigating the debts and LVNV's authority to collect in both Utah and Nevada; and (iii) continuation of the fraudulent collection scheme that ultimately led to unlawfully-commenced litigation in September 2024.

Predicate Act 9 – Mail Fraud (Litigation Mailings in Unlicensed Case, October-November 2024)

132. Who/What: Johnson Mark LLC, on behalf of LVNV and Resurgent, mailed the following litigation documents via U.S. Mail in Case No. 249105258: October 11, 2024 Motion to Dismiss for Failure to Prosecute; October 27, 2024 Reply to Plaintiff's Opposition; November 13, 2024 Motion to Dismiss and Response to Discovery Requests.

133. Where: Each document was mailed via U.S. Postal Service from Johnson Mark's offices to Plaintiff's address at 1174 S 200 E, Orem, Utah 84058.

134. Why False: Each mailing perpetuated the prosecution of Case No. 249105258, which was unlawfully commenced on September 17, 2024, while LVNV was not registered under Utah's CCN program. Although LVNV obtained CCN registration on September 19, 2024, the case remained fundamentally tainted by its unlawful commencement. Utah law does not permit retroactive ratification of unlawfully commenced collection litigation through after-the-fact licensing. Each mailing implicitly represented that the underlying lawsuit was lawfully initiated and that LVNV possessed valid legal standing to pursue the collection action, which was materially false.

135. Proximate Cause: Each mailing directly caused Plaintiff to incur costs responding to motions, preparing oppositions, conducting legal research, copying documents, and purchasing postage. The cumulative effect of these mailings forced Plaintiff to defend against an unlawfully-initiated lawsuit for over two months, incurring time and expense that would not have been necessary had Defendants complied with Utah licensing requirements before commencing collection litigation.

136. On information and belief, the predicate acts described above are part of a larger, systematic fraudulent scheme affecting consumers nationwide, as evidenced by: CFPB records containing approximately 73 consumer complaints against LVNV filed January 2020-June 2025 alleging substantially similar conduct; PACER federal court records revealing over 1,200 federal lawsuits naming LVNV and approximately 60 naming Johnson Mark, filed 2011-2025 across at least 15 federal districts; and the Maryland precedent (Finch v. LVNV Funding, LLC) involving 1,590 consumers who obtained a $38 million judgment for unlicensed collection spanning 2007-2016.

137. These facts demonstrate that Defendants' use of mail and wire communications to execute fraudulent debt collection schemes is not limited to Plaintiff's individual case but reflects a systematic, ongoing pattern of racketeering activity affecting consumers nationwide over nearly two decades.

D. Pattern of Racketeering Activity Established Under H.J. Inc. v. Northwestern Bell

138. The predicate acts constitute a "pattern of racketeering activity" under 18 U.S.C. § 1961(5) and the two-pronged test established in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

139. Relatedness (H.J. Inc. first prong): The predicate acts are related through common victims (consumers subjected to unlicensed debt collection), common purpose (maximize profit while evading licensing requirements in multiple jurisdictions), common participants (LVNV, Resurgent, and Johnson Mark enterprise), common methods (fraudulent court filings regarding licensing status, false certificates of service, and systematic arbitration manipulation), and common results (court judgments and debt collections obtained through fraud with litigation costs shifted to consumers).

140. Continuity (H.J. Inc. second prong): The predicate acts demonstrate both closed-ended and open-ended continuity:

   (a) Closed-Ended Continuity: Multiple predicate acts spanning approximately nineteen months from February 20, 2024 (dunning letter while unlicensed in Utah and Nevada) through September 22, 2025 (W. Paige Hale affidavits filed in AAA arbitration), involving nine distinct wire fraud and mail fraud acts directed at Plaintiff. The sustained nature of this scheme—moving from pre-suit dunning letters, to unlawfully-commenced litigation, to manipulated arbitration, to false service certificates designed to obtain default relief—evidences a threat of continued criminal conduct sufficient to satisfy H.J. Inc., 492 U.S. at 239.

   (b) Open-Ended Continuity: The racketeering activity is part of Defendants' regular way of doing business and poses an ongoing threat to consumers nationwide, as evidenced by: nearly two-decade pattern of unlicensed collection (Maryland precedent demonstrates unlicensed collection 2007-2016 affecting 1,590 consumers; critically, Defendants continued unlicensed collection even after a 2013 court ruling that judgments obtained while unlicensed were void); current nationwide operations (PACER records reveal over 1,200 federal cases against LVNV and 60 against Johnson Mark spanning 2011-2025 across at least 15 federal districts); recent systematic pattern during same period as Plaintiff's cases (73 CFPB complaints filed January 2020-June 2025 alleging substantially similar conduct); ongoing active prosecution (as of filing, Defendants continue to prosecute collection claims through the same enterprise structure using the same methods); and business model dependence on systematic fraud (the enterprise's profitability depends fundamentally on acquiring debt portfolios at deep discounts, maximizing collection rates through volume litigation, evading licensing requirements to reduce costs, manipulating arbitration to shift costs to consumers, and filing cases without adequate attorney review to maintain high throughput).

141. The pattern poses a threat of continuing racketeering activity because: Defendants have not ceased the underlying conduct; active ongoing litigation confirms continued operations; history demonstrates willful persistence despite adverse rulings (Maryland Court of Special Appeals ruled in 2013 that judgments obtained while unlicensed were void, yet Defendants continued unlicensed collection through mid-2016); economic incentives ensure continuation

(purchasing defaulted debt at 1-5% of face value, filing high-volume lawsuits, obtaining default judgments or settlements, and generating returns of 300-500%+ on portfolio acquisitions creates powerful incentives to continue the fraudulent scheme); nationwide scope prevents state-by-state enforcement (the enterprise operates across at least 15 states, and fragmented state enforcement enables persistence by shifting focus among jurisdictions); and pattern continued through present (73 CFPB complaints filed January 2020-June 2025 demonstrate the enterprise was simultaneously executing the same fraudulent scheme against numerous consumers while victimizing Plaintiff).

142. Absent judicial intervention—including RICO treble damages and potential referral to enforcement authorities—Defendants will continue to victimize consumers nationwide through the same pattern of mail and wire fraud, unlicensed collection in multiple jurisdictions, and procedural manipulation that harmed Plaintiff.

 E. Injury to Business or Property and Proximate Causation

143. Plaintiff has been injured in his business or property "by reason of" Defendants' racketeering activity within the meaning of 18 U.S.C. § 1964(c).

144. Defendants' pattern of racketeering activity directly and proximately caused pecuniary injuries to Plaintiff's business or property. Each predicate act caused specific, traceable damages as follows:

   (a) Predicate Acts 1-2 (Unlicensed E-Filing, September 17, 2024 and Continued E-Filings October 2024-May 2025): $300 in costs defending unlawfully commenced action, including legal research, copying, and postage for responsive filings;

   (b) Predicate Acts 3-4 (False Service Certificates, September 10, 2025): $500 in emergency response costs incurred September 12-15, 2025, responding to false service certificates with fewer than one business day's notice before the September 15 hearing;

   (c) Predicate Act 5 (AAA Arbitration Manipulation, June-September 2025): $200 in forced arbitration filing fees and costs preparing for manipulated arbitration proceedings;

   (d) Predicate Acts 6-9 (Affidavits and Mail Fraud): $110 investigating enterprise coordination, unlicensed status in Utah and Nevada, and chain-of-title defects upon discovery of pre-suit letters and coordinated affidavits;

   (e) Federal Court Costs: $405.00 filing fee for this action; $155.00 process-server fee; and $50.00 in printing/supplies;

   (f) Fraud Investigation and Mitigation Costs: Approximately 200 hours investigating and mitigating Defendants' fraudulent conduct, reasonably valued at $50/hour (substantially below Plaintiff's actual earning capacity and attorney rates), totaling $10,000. This time was directly

caused by Defendants' predicate acts and included: researching Utah/Nevada licensing requirements; obtaining and analyzing DFI/NMLS records and CFPB/PACER patterns; analyzing AAA arbitration manipulation; and preparing defensive filings in state court and arbitration. To the extent pro se time is not compensable under RICO's "costs of suit" provision, Plaintiff alternatively seeks recognition of this time as opportunity costs and economic injury to business or property within the meaning of 18 U.S.C. § 1964(c).

145. Total damages presently ascertainable: $11,720.00, subject to supplementation under Fed. R. Civ. P. 26(e).

146. These pecuniary injuries were directly and foreseeably caused by Defendants' specific predicate acts of wire and mail fraud. Each predicate act was both the but-for and proximate cause of these injuries, because every act directly compelled responsive filings, research, or expenditures that would not have occurred absent Defendants' fraudulent conduct.

147. Plaintiff's injuries are concrete and particularized, not generalized grievances. Plaintiff was specifically targeted by Defendants' fraudulent scheme through two separate lawsuits filed in Utah state court, forced participation in two arbitration proceedings, and false service certificates designed to obtain default relief against Plaintiff individually.

148. Plaintiff's claimed injuries are economic injuries to business or property, not personal injuries. Plaintiff does not seek recovery under RICO for emotional distress, pain and suffering, or other personal injuries, which are not compensable under 18 U.S.C. § 1964(c). All damages claimed are pecuniary losses to property (money) and business interests (time and opportunity costs).

149. Plaintiff has standing under 18 U.S.C. § 1964(c) because he has suffered concrete economic injury to business or property by reason of Defendants' pattern of racketeering activity.

F. Potential Class Allegations

150. Plaintiff reserves the right to move for class certification under Fed. R. Civ. P. 23, if and when counsel appears, on behalf of: All persons in the United States who, between January 1, 2020 and the present: were sued by LVNV Funding, LLC, Resurgent Capital Services, L.P., or their agents in any court; where LVNV was not licensed under applicable state collection agency laws at the time of filing; where LVNV used interstate wire communications or U.S. Mail in furtherance of collection activities; and where the underlying debt arose from a contract containing an arbitration clause.

151. On information and belief, the potential class includes: the 1,590 Maryland consumers identified in Finch v. LVNV Funding, LLC (2007-2016); approximately 73 consumers who filed CFPB complaints (January 2024-June 2025) alleging similar arbitration abuse and unlicensed collection; and additional victims to be identified through discovery.

152. Common questions of law and fact predominate, including: whether Defendants operated an enterprise affecting interstate commerce; whether Defendants engaged in a pattern of racketeering activity through mail and wire fraud; whether Defendants' mail and wire fraud predicate acts were in furtherance of a common fraudulent scheme involving unlicensed collection and arbitration manipulation; whether class members suffered injury to business or property by reason of Defendants' RICO violations; and the appropriate measure of damages and whether trebling is warranted under 18 U.S.C. § 1964(c).

 G. Prayer for Relief - Count VII

153. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on Count VII and grant the following relief:

   (A) Compensatory damages under 18 U.S.C. § 1964(c) for all injuries to business or property proximately caused by Defendants' racketeering activity, in an amount to be proven at trial, currently estimated at $11,720.00;

   (B) Treble damages pursuant to 18 U.S.C. § 1964(c) (three times compensatory damages, exclusive of attorney's fees and costs), currently estimated at $35,160.00;

   (C) Costs of suit, including costs of investigation, litigation, and expert witnesses, pursuant to 18 U.S.C. § 1964(c);

   (D) Pre-judgment interest at the legal rate from the date of each injury;

   (E) Post-judgment interest at the legal rate;

   (F) Such other and further relief as the Court deems just and proper.

---

 COUNT VIII – RICO CONSPIRACY (18 U.S.C. § 1962(d))

154. Plaintiff realleges and incorporates by reference all preceding paragraphs.

155. At all relevant times, Defendants LVNV Funding, LLC, Resurgent Capital Services, L.P., and Johnson Mark LLC knowingly and intentionally agreed to participate in the conduct of the affairs of the enterprise described in Count VII through a pattern of racketeering activity.

156. The agreement among Defendants included: a common understanding that LVNV would acquire debt portfolios and direct collection strategy, including decisions to file lawsuits without obtaining or maintaining required state collection agency licenses in Utah and Nevada; a common understanding that Resurgent would manage portfolios, coordinate litigation efforts,

and direct Johnson Mark's filing activities; a common understanding that Johnson Mark would file collection lawsuits via interstate wire communications containing implicit false representations by omission regarding licensing status, authority to collect, and attorney review; a common understanding that the enterprise would manipulate arbitration procedures to force consumers into the claimant role, avoid arbitration fee obligations, and then attempt to set aside arbitration when convenient; a common understanding that Johnson Mark would file certificates of service via interstate wires falsely representing service on opposing parties to obtain hearings without actual notice; and a common understanding that interstate wire communications and U.S. Mail would be used to execute this scheme.

157. In furtherance of this agreement, each Defendant committed overt acts, including: LVNV's decision to file Case No. 249105258 on September 17, 2024, without obtaining Utah CCN registration (obtained September 19, 2024); Johnson Mark's electronic filing of the unlicensed complaint via Utah's court system (Predicate Act 1); Johnson Mark's continued electronic filings in the unlawfully commenced case (Predicate Act 2); Johnson Mark's electronic filing of false service certificates on September 10, 2025 (Predicate Acts 3, 4); Resurgent/LVNV's electronic communications with AAA manipulating arbitration procedures (Predicate Act 5); Resurgent employees W. Paige Hale and Sara Stephens' creation and filing of affidavits for LVNV (Predicate Act 6); and Johnson Mark's mailings of dunning letters, validation letters, and litigation documents perpetuating the unlawfully commenced action while operating without required licenses in Utah and Nevada (Predicate Acts 7, 8, 9).

158. As a direct and proximate result of Defendants' conspiracy to violate 18 U.S.C. § 1962(c), Plaintiff suffered the same injuries to business or property alleged in Count VII, paragraphs 143-149.

159. WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff on Count VIII and grant the following relief:

(A) Compensatory damages under 18 U.S.C. § 1964(c) for all injuries to business or property proximately caused by Defendants' RICO conspiracy, in an amount to be proven at trial, currently estimated at $11,720.00;

(B) Treble damages pursuant to 18 U.S.C. § 1964(c), currently estimated at $35,160.00;

(C) Costs of suit pursuant to 18 U.S.C. § 1964(c);

(D) Pre-judgment and post-judgment interest at the legal rate;

(E) Such other and further relief as the Court deems just and proper.

---

RESERVATION TO AMEND

160. Plaintiff reserves the right to amend this Complaint with further facts and claims as discovery proceeds, including negligence per se, sanctions for delay, and additional statutory violations. Plaintiff further reserves the right to conform all factual allegations, including filing and service dates, licensing status, and procedural timelines, to the evidence produced in discovery. Plaintiff also expressly reserves the right to seek class treatment under Rule 23 should discovery confirm that Defendants' unlicensed collection activity reflects a systemic pattern affecting similarly situated consumers.

---

PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment:

A. FDCPA damages (statutory up to $1,000 per action; actual and emotional-distress damages; reasonable attorney's fees and taxable costs under 15 U.S.C. § 1692k and 28 U.S.C. § 1920);

B. Utah UCSPA damages (actual damages or up to $2,000 per violation, and for willful violations enhanced damages up to three times actual damages; injunctive relief; attorney's fees and costs under Utah Code § 13-11-19(5));

C. Abuse of Process damages (compensatory damages, punitive damages for willful misconduct, attorney's fees and costs);

D. Injunctive relief under UCSPA and Nevada law as pleaded (narrowly enjoining unregistered filings, arbitration flip-flopping, and defective notice tactics). Enjoin Defendants from (i) initiating or prosecuting Utah collections without maintaining all required registrations and licenses in good standing at the time of filing and service, (ii) shifting arbitration initiation to consumers after moving to compel, and (iii) noticing hearings without actual service. Injunctive relief is sought under UCSPA and Nevada law only (not under the FDCPA);

E. Nevada DTPA damages (statutory and actual damages, punitive damages as permitted by NRS 42.005, attorney's fees under NRS 41.600(3));

F. RICO damages under 18 U.S.C. § 1964(c):
   - Compensatory damages for injuries to business or property, currently estimated at $11,720.00;
   - Treble damages (three times compensatory damages, exclusive of attorney's fees and costs), currently estimated at $35,160.00;
   - Costs of suit, including investigation costs;

G. Declaration of arbitration waiver, or alternatively an order requiring Defendants to prosecute any arbitration as claimant and advance all AAA fees;

H. Declaration that no enforceable contract/arbitration clause exists absent E-SIGN compliant proof;

I. Pre- and post-judgment interest;

J. Taxable costs, and attorney's fees where authorized (if represented by counsel), including under Utah Code § 13-11-19(5), NRS 41.600(3), and 18 U.S.C. § 1964(c);

K. Equitable tolling of any FDCPA claim predicated on pre-September 2024 communications deemed untimely, on grounds that Defendants fraudulently concealed their unlicensed status and Plaintiff could not have discovered the licensing violations until discovery revealed the CCN timeline in September 2025;

L. Such other relief as the Court deems just.

All relief is cumulative where permitted, and pled in the alternative where overlap exists; Plaintiff does not seek duplicative recovery.

---

 JURY DEMAND

Plaintiff demands trial by jury on all issues so triable under Counts I through VIII.

---

 EXHIBITS

• Ex. A – Credit One cardholder agreement (governing-law and arbitration pages)
• Ex. B-1/B-2 – Utah DFI CCN records (downloaded Sept. 12, 2025; showing CCN effective Sept. 19, 2024)
• Ex. C – Nevada/NMLS records (showing no LVNV license; LVNV holds 30 state licenses but Nevada not among them)
• Ex. D-1 – Utah state docket (Case No. 249105685)
• Ex. D-2 – Utah state docket (Case No. 249105258)
• Ex. E-1/E-2 – AAA case confirmations showing Plaintiff forced as claimant (both cases)
• Ex. G-1/G-2 – Motions to Set Aside Arbitration (Sept. 10, 2025) for each case
• Ex. H-1/H-2 – Certificates of Service excerpts from those motions (each case)
• Ex. I – Plaintiff's Opposition (due process/sanctions request)
• Ex. J – Corrected Timeline of Defendants' Misconduct (FRE 1006 summary)
• Ex. K – Summons dated September 27, 2024 (Case No. 249105685)
• Ex. L – Process Server Affidavit (Sept. 16, 2024) — Case No. 249105258
• Ex. M – Process Server Affidavit dated October 23, 2024 (Case No. 249105685)

• Ex. N – Summons dated May 3, 2024 (issued approximately 137 days before filing Case No. 249105258)

• Ex. O – AAA Preliminary Hearing Report (showing LVNV refused to file counterclaim and stating "Nevada law will be applied substantively to this arbitration")

• Ex. P – Notice of Correction/Errata (Sept. 22, 2025) clarifying hearing scheduling in Ex. I

• Ex. Q – Email from Sara Stephens dated July 17, 2025, confirming her employment with Resurgent Capital Services

• Ex. R – W. Paige Hale Affidavit notarized by Sara Stephens, filed in AAA Case No. 01-25-0002-6361 (September 22, 2025)

• Ex. S – W. Paige Hale Affidavit notarized by Sara Stephens, filed in AAA Case No. 01-25-0002-6360 (September 22, 2025)

• Ex. T – Validation letter dated February 20, 2024, sent to DMB Financial (account -5776, $1,098.86)

• Ex. U – Validation letter dated March 25, 2024, sent to DMB Financial (account -8860, $1,013.14)

---

Respectfully submitted,

Dated: October 7, 2025

/s/ Ross Logan
Ross Logan
1174 South 200 East
Orem, Utah 84058
Tel: (619) 490-9082
Email: rosswlogan@gmail.com
Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2025, I served a true and correct copy of the foregoing FIRST AMENDED COMPLAINT via email to:


Email: utahattorneys@jmlaw.com, PRichins@jmlaw.com