Chase A. Adams (#15080)
STEELE ADAMS HOSMAN PLLC
6713 South 1300 East
Cottonwood Heights, Utah 84121
Telephone: (801) 816-3999
chase@sahlegal.com

*Attorney for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ROSS LOGAN,<br><br>　　　Plaintiff,<br><br>vs.<br><br>LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP; JOHNSON MARK LLC;<br><br>　　　Defendant(s). | Case Number: 2:25-CV-00848-JCB<br><br>**DEFENDANTS LVNV FUNDING LLC AND RESURGENT CAPITAL SERVICES LP'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Defendants LVNV Funding LLC ("LVNV") and Resurgent Capital Services L.P. ("Resurgent") (LVNV and Resurgent are collectively the "Defendants"), by and through their undersigned counsel, hereby submit this Motion for Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure Rules 12(c) on the grounds that the entire First Amended Complaint ("FAC") is barred by claim and issue preclusion, as follows:

**I.   Introduction**

For the third time, Plaintiff Ross Logan ("Plaintiff") seeks to re-litigate the very matters already finally adjudicated by two AAA arbitrators and confirmed by two Utah State Court Judges. Indeed, LVNV filed two collection lawsuits against Plaintiff in 2024, which Plaintiff compelled to arbitration. Plaintiff subsequently initiated arbitration proceedings against LVNV

and sought relief against LVNV under the same theories he now asserts in this action. Those arbitrations were decided in favor of LVNV, but Plaintiff nevertheless seeks yet another opportunity to litigate his claims. This action, however, is fatally flawed because it is barred by claim and issue preclusion. Accordingly, this action fails as a matter of law, and Defendants respectfully request that the Court dismiss this case in its entirety with prejudice.

II.     **Summary of Allegations and Procedural History**

      A.     **The First State Court Action**

On September 17, 2024, LVNV filed a lawsuit against Plaintiff in Case Number 249105258 in the Fourth Judicial District, Provo District Court, Utah County (the "First Action"). *See* **Exhibit A**, First Action Complaint; **Exhibit B**, Docket for First Action. In the First Action, LVNV sought entry of judgment related to a Credit One Bank account in the amount of $1,013.14. Plaintiff compelled the First Action to arbitration. **Exhibit B**, May 19, 2025 Docket Entry ("Defendant requests to complete arbitration…The Court orders this matter stayed for 120 days for the parties to complete arbitration.").

Plaintiff subsequently filed a Demand for Arbitration with the American Arbitration Association ("AAA"), in which he stated: "The business filed a lawsuit against me in Utah state court to collect on a charged-off Credit One Bank credit card account. I dispute the validity of the alleged debt and am electing arbitration as required by the Credit One Bank Cardholder Agreement." **Exhibit C**, Demand for Arbitration, Consumer Arbitration Rules.

Subsequently, on October 10, 2025, Plaintiff filed a Motion to Dismiss LVNV's claims, in which he argued, among other things, (1) LVNV lacks proper licensure under Nevada and Utah law, (2) LVNV sent a validation letter dated March 25, 2024 to DMB Financial in Massachusetts rather than Plaintiff, and (3) LVNV violated the FDCPA by failing to comply

with state licensing requirements.  **Exhibit D**, Plaintiff's Arbitration Motion to Dismiss LVNV's Claims.  On October 16, 2025, Plaintiff emailed the arbitrator, Timothy R. Pack, and requested dismissal of LVNV's claims with prejudice because, among other things: (a) LVNV had "parallel court filings" during the pendency of the arbitration, (b) LVNV was participating in the arbitration in "bad faith," (c) LVNV was acting inconsistently with the credit card agreement, and (d) LVNV was engaged in a "pattern of forum manipulation."  **Exhibit E**, Plaintiff's October 16, 2025, Email to Arbitrator Pack.

The parties proceeded to arbitrate the dispute which culminated with an arbitration hearing before Arbitrator Pack on November 20, 2025.  On November 25, 2025, Arbitrator Pack issued a final arbitration award in favor of Respondent LVNV, as follows:

> Respondent LVNV Funding ("LVNV") alleges that Claimant Ross Logan ("Logan") incurred a debt with [Credit] One Bank in the amount of $1,013.14 (the "Debt"), that LVNV is now the owner and holder of the Debt, that the Debt has not been repaid, and that Logan is liable on the Debt.  ***Logan alleges that LVNV does not own the Debt and that it otherwise does not have the right to pursue collection of the Debt.***
>
> … Notably, Logan did not present any evidence: (i) that he did not incur the Debt, (ii) that he did not owe the Debt to Credit One Bank, or (iii) that the amount of the Debt was not $1,013.14.
>
> …***Logan argues that LVNV cannot pursue collection of the Debt under Nevada Revised Stat. § 97A.160***. The case In re Robles, No. 21-12702-NMC, 2022 WL 4486724, at *3 (Bankr. D. Nev. Sept. 27, 2022) is controlling on this issue. In re Robles holds that NRS 97A.160 applies to cases where an issuer or credit card purchaser is attempting to establish liability and requires them "to provide evidence supporting a debtor's liability and the amount of the debt to obtain a judgment even if the complaint is not controverted. " Id. at *5. That case also clarifies that a creditor "may" establish a debtor's liability through the presentation of certain authenticated records listed in the statute. ***I find that NRS § 97A.160 does not bar an award in favor of LVNV*** because: (i) Logan does not contest he is liable for the Debt, he contests LVNV's right to enforce and collect that Debt; and (ii) LVNV has established Logan is liable for the debt through other satisfactory means.

> Based on the foregoing, I award as follows:
>
> 1. The relief sought in Logan's claim is denied.
>
> 2. The relief sought in LVNV's counterclaim is granted.
>
> 3. The sum of $1,013.14 is awarded in favor of LVNV and against Logan.
>
> …
>
> This Final Award is in full settlement of all claims submitted to this arbitration. ***All claims not expressly granted herein are hereby denied.***

**Exhibit F** (emphasis added).

Following the conclusion of the arbitration, the Honorable Roger W. Griffin confirmed the arbitration award:

> Plaintiff's Motion for Order Confirming Arbitration Award was filed on December 5, 2025. No opposition to the Motion has been filed and the time to do so has now passed. Plaintiff has submitted the Motion for decision and no hearing has been requested. The Court determines that there is no just reason for delay and the arbitration decision reached by arbitrator Timothy R. Pack in favor of Plaintiff and against Defendant Ross Logan is hereby confirmed.

**Exhibit G**.

    **B.**    **The Second State Court Action**

On October 8, 2024, LVNV filed a lawsuit against Plaintiff in the Fourth Judicial District, Provo District Court, Utah County (the "Second Action"). *See* **Exhibit H**, Second Action Complaint; **Exhibit I**, Docket for Second Action. In the Second Action, LVNV sought judgment in its favor related to a Credit One Bank account in the amount of $1,098.86. Plaintiff compelled the Second Action to arbitration. **Exhibit I**, April 14, 2025 Docket Entry ("The Court orders a 60 day stay on this matter to allow the defendant to have arbitration scheduled.").

Plaintiff subsequently filed a Demand for Arbitration with the American Arbitration Association ("AAA"), in which he stated: "The business filed a lawsuit against me in Utah state

court to collect on a charged-off Credit One Bank credit card account. I dispute the validity of the alleged debt and am electing arbitration as required by the Credit One Bank Cardholder Agreement." **Exhibit J**, Demand for Arbitration, Consumer Arbitration Rules.

On September 12, 2025, Plaintiff filed a Motion for Summary Disposition in which he argued LVNV is not licensed as a debt collector in Nevada, and thus, it lacked standing to collect the debt. **Exhibit K**, Motion for Summary Disposition, Lack of Standing Under Nevada Law. Thereafter, on September 28, 2025, Plaintiff filed a Response to LVNV's Initial Submission, in which he argued, among other things: (1) LVNV engaged in "bad faith" litigation conduct by continuing to seek relief in state court after the case was compelled to arbitration, (2) LVNV lacks proper licensure under Nevada law, and (3) LVNV violated the FDCPA by failing to send a proper validation notice. **Exhibit L**, Claimant's Response to Respondent's Initial Submission. Next, on October 7, 2025, Plaintiff submitted a supplemental response to LVNV's initial submission, in which he made additional arguments, but notably reiterated that (a) a dunning letter was improperly mailed to DMB Financial in Massachusetts rather than to Plaintiff, and (b) LVNV did not have proper licensure under Nevada law. **Exhibit M**, Claimant's Supplemental Response To Respondent's Initial Submission. Finally, on October 17, 2025, Plaintiff submitted a second supplemental brief in which he argued that LVNV was engaged in "forum manipulation." **Exhibit N**, Claimant's Second Supplemental Response Re: Respondent's Continued Forum Manipulation.

The parties proceeded to arbitrate the dispute which culminated with a desk arbitration before Arbitrator Langdon T. Owen, Jr. On October 30, 2025, Arbitrator Owen issued a final arbitration award in favor of LVNV, as follows:

> Langdon T. Owen, Jr., the arbitrator, held a desk arbitration of this matter which was brought by Mr. Logan to challenge a debt alleged to be owed

> by him. Each of the parties submitted written evidence and arguments. The issues in their case are whether the debt of Mr. Logan is due and payable, whether it now belongs to LVNV, and, if so, whether LVNV has standing to collect that debt, ***and whether conduct by LVNV in this proceeding or in its attempts to collect the debt should be sanctioned or otherwise act as a defense to the debt.***
>
> The arbitrator finds that the debt, in the amount of $1,098.86 was incurred by Mr. Logan and that LVNV has met its burden of proof that the debt is owing and due and payable and is subject to the credit agreement that was agreed to by Mr. Logan who did not dispute the debt through the agreed process…. ***Among other things no Nevada license is needed to collect a debt in Utah and Mr. Logan's Motion for Summary Disposition – Lack of Standing under Nevada Law is without merit and denied in full. LVNV has committed no misconduct or bad faith actions or prejudicial procedural missteps in these proceedings or in its attempt to collect the debt….***
>
> LVNV is awarded $1,098.86 plus $155 against Mr. Logan (total $1,253.86) payable immediately … This Final Award is in full and final settlement of all claims or counterclaims submitted to this Arbitration. ***All claims and counterclaims not expressly granted are denied.***

**Exhibit O** (emphasis added).

Following the conclusion of the arbitration, LVNV moved to confirm the arbitration award, and the Honorable Denise M. Porter confirmed the arbitration award:

> The Court reviewed the papers regarding the Plaintiff's motion to confirm the arbitration award. This includes the Defendant's opposition that was also couched as a separate motion to set aside the arbitration award, despite the motion practice rules forbidding motions within oppositions. See Utah R. Civ. P. 7(n). The Defendant also raised in that paper an argument that is irrelevant and immaterial that there may be parallel proceedings covering overlapping subject matter in a suit in federal court. These things—i.e., an improper motion within an opposition, and an irrelevant and immaterial notice of another case—are unpersuasive as grounds to halt confirmation of the award.
>
> Put another way, the Court is persuaded the award should be confirmed, and the motion to set aside (and any related objection) denied. As recounted in the Plaintiff's reply memorandum, the Defendant's opposition memorandum fails to raise, develop, and demonstrate adequate grounds in fact or law to prevent confirmation of the award. See Reply at 2 (making this argument and citing Utah Code § 78B-11-124, et. seq.).

> Indeed, it was the Defendant who insisted upon binding arbitration as the correct forum to hear the dispute. This the Defendant's right, given the way the contract was structured. But only now that the proceeding has resulted in an adverse outcome for the Defendant does the Defendant raise conclusory unsupported arguments about procedural improprieties and alleged abuses of discretion by the arbitrator that amount to mere legal opinions that differ with the arbitrator's or express disagreement with how the arbitrator handled the case.
>
> Unfortunately for the Defendant, relevant governing law as applied to these positions means he has no case. Buzas Baseball Inc. v. Salt Lake Trappers, 925 P.2d 941, 947-48 (Utah 1996) (stating that "the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances" and "courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts..." (citations omitted)).
>
> Upon scrutiny of the record, the Court is satisfied that the award is the result of the arbitrator's reasoned consideration of the available evidence, where the arbitrator was properly disinterested and acting well within the arbitrator's discretion regarding how the case was handled including making legal rulings as permitted by Utah law. The Defendant has no grounds to oppose the confirmation.
>
> For these reasons, the Court GRANTS the Plaintiff's motion to confirm. The Court also denies the Defendant's motion to set aside. It is so ordered.

**Exhibit P**. On December 11, 2025, Judge Porter subsequently entered Judgment in favor of LVNV. *See* **Exhibit I**.

On December 5, 2025, Plaintiff filed a notice of appeal. However, on January 30, 2026, the appeal was dismissed due to Plaintiff's default, and Plaintiff's subsequent failure to cure the default within seven days resulted in a final dismissal. **Exhibit Q** ("…IT IS HEREBY ORDERED that the appeal is dismissed for failure of Appellant to pay the required filing fee and cost bond.").

### C. The Instant Federal Court Action

Although Plaintiff was already seeking relief in the underlying arbitration proceedings, he nevertheless filed the instant action seeking the same affirmative relief on September 25, 2025.

In the Amended Complaint, Plaintiff alleges seven causes of action for: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), (2) Declaratory Judgment; (3) violation of the Utah Consumer Sales Practices Act ("CSPA"), (4) Abuse of Process, (5) violation of the Nevada Deceptive Trade Practices Act ("DTPA"), (6) Declaratory Relief, and (7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Each of Plaintiff's seven causes of action is based on the same contentions he made in the underlying arbitrations. *See, e.g.*, FAC at p.1. First, Plaintiff contends that Defendants "invok[ed] Nevada law when advantageous while ignoring Nevada's licensing obligations and litigating despite a mandatory arbitration clause." *Id*. at p.1 and ¶¶ 75-83, 102-103. Second, Plaintiff alleges that Defendants "pursu[ed] parallel litigation and arbitration to maximize procedural advantage while forcing Plaintiff to prosecute arbitration as claimant." *Id*. at p.1 and ¶¶ 67-60, 102. Third, Plaintiff states Defendants "sen[t] unlicensed dunning letters, issu[ed] summons approximately 139 days before filing, and fil[ed] false service certificates to exploit a pre-scheduling hearing without actual notice." *Id*. at p.1 and ¶¶ 68-69, 102-103; *see also* ¶ 10(a) ("Plaintiff never received the February 20, 2024 dunning letter (Predicate Act 7) or the March 25, 2024 validation letter (Predicate Act 8). Both letters were sent to DMB Financial in Beverly, Massachusetts—not to Plaintiff at his Utah address."). Finally, Plaintiff contends that Defendants "operat[ed] through an integrated RICO enterprise using interstate communications to execute fraudulent schemes affecting consumers nationwide." *Id*. at p.1 and ¶¶ 68-149. The RICO claim is again premised, in part, on LVNV's allege failure to obtain proper licensure in Utah and Nevada. FAC ¶ 102. Plaintiff also alleges that Defendants engaged in various other acts that support his seven causes of action including, among other things, engaging in collection activity in Utah without registering as a debt collector (FAC ¶¶ 47-48, 62-63), failing to mail

Plaintiff a validation notice pursuant to Section 1692g of the FDCPA (FAC ¶ 49), and communicating with third-parties regarding Plaintiff's accounts (FAC ¶ 50). Each of these issues has already been decided in the underlying arbitrations.

## III.     Legal Arguments

### A.     Legal Standard for Motion for Judgment on the Pleadings

A party may make a 12(c) motion for judgment on the pleadings once the pleadings are closed, and courts treat such motions as motions to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(c); *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (*citing Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir.1992)). "Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) [and 12(c)] when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted." *Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2021 WL 4155068, at *2 (D. Utah Sept. 13, 2021) "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). However, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Ultimately, the issue "is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support [the plaintiff's] claims." *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (citation omitted).

B.     The Doctrines of Claim and Issue Preclusion

The doctrine of res judicata, or claim preclusion, precludes parties from relitigating issues that were or could have been raised in the prior action. *Lance v. Sandy City Corp.*, No. 2:06-CV-240, 2006 WL 2098825, at *2 (D. Utah July 25, 2006), citing *Satsky v. Paramount Comm., Inc.*, 7 F.3d 1464, 1467 (10th Cir.1993). The doctrine applies when: (1) a final judgment on the merits has been entered in the earlier action; (2) the earlier action involved the same parties or their privies; and (3) the earlier action involved identical claims as the claims brought in the new action. *See Yapp v. Excel Corp.,* 186 F.3d 1222, 1226 (10th Cir. 1999); *Satsky,* 7 F.3d at 1467. The Tenth Circuit has explained that "a claim arising out of the same 'transaction, or series of connected transactions' as a previous suit, which concluded in a valid and final judgment, will be precluded." *Yapp,* 186 F.3d at 1227 (citation omitted). A court determines what constitutes a transaction or series of transactions by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Yapp,* 186 F.3d at 1227. "Res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication." *Lance*, 2006 WL 2098825, at *2, citing *Satsky,* 7 F.3d at 1467.

Like claim preclusion, the doctrine of collateral estoppel, also known as issue preclusion, applies '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' " *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quoting Restatement (Second) of Judgments § 27, at 250 (1982)). The Tenth Circuit has previously applied collateral estoppel to a confirmed

arbitration award. *Coffey v. Dean Witter Reynolds Inc.,* 961 F.2d 922, 927-28 (10th Cir.1992); *see* 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4475.1, at 514-18.  The doctrine precludes a court from reconsidering an issue previously decided in a prior action where (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006), citing *Estate of True v. C.I.R.,* 390 F.3d 1210, 1232 (10th Cir. 2004).

Here, as set forth below, Plaintiff's claims are barred by both claim and issue preclusion.

### 1. Final Judgment Was Entered in Favor of LVNV in the First Action and Second Action

First, the finality requirement is clearly satisfied because a confirmed arbitration award constitutes a final judgment on the merits.  *Coffey*, 961 F.2d at 927-28.  Here, in the First Action and Second Action, respectively, Arbitrators Timothy R. Pack and Langdon T. Owen, Jr., entered final arbitration awards in favor of LVNV and against Plaintiff.  **Exhibits F and O**. Moreover, both awards expressly denied Plaintiff's claims, which are identical to the claims in this action, as well as any other claims not specifically granted in the awards.  *Id*.  Finally, the arbitration awards in each matter were also confirmed by Judges Roger W. Griffin and Denise M. Porter of the Fourth Judicial District, Provo District Court, Utah County, rendering them final judgments for purposes of claim and issue preclusion.  **Exhibits G and P**.

Thus, there was a final judgment on the merits in the First Action and Second Action.

### 2. There is Identity of Parties Between the First Action, Second Action and The Instant Action

Second, there can be no dispute that there is complete identity of parties between the First Action, Second Action, and the instant action. The Tenth Circuit has found privity in the following circumstances: "a corporation and its officers and directors, a subsidiary and its "controlling" parent, a corporation and its agent, and a "subsidiary assignee" and its sister subsidiary and parent." *Bank of the W. v. Whitney*, No. 2:17-CV-210 TS, 2017 WL 4539323, at *4 and fn. 28-30 (D. Utah Oct. 10, 2017). Courts have also found privity where a plaintiff alleged that the defendants were acting jointly and severally to collect a debt. In *Razo v. Jefferson Capital Systems LLC*, Judge Dale A. Kimball found that a debt collector's attorney that filed a lawsuit on the collector's behalf was in privity with the collector. *Razo*, 2024 WL 4519174, * 5 (Oct. 17, 2024) ("[Attorney] Cullimore, an alleged employee and agent of Jefferson Capital, who was acting 'jointly and severally' with Jefferson Capital, was in privity with Jefferson Capital.").

Here, as in *Razo*, privity exists between the Defendants because Plaintiff alleges that LVNV, Resurgent and Johnson Mark acted jointly and severally to handle the First Action and Second Action. Indeed, Plaintiff expressly alleges that Resurgent is LVNV's agent: "LVNV, through its agent Resurgent Capital Services, directed Johnson Mark LLC to initiate and prosecute Utah litigation on LVNV's behalf as the named plaintiff." FAC ¶ 5(c); *see also* ¶ 5(d) ("Resurgent Capital Services employees W. Paige Hale and Sara Stephens created, executed, and filed sworn affidavits in Utah-based AAA arbitration proceedings on September 22, 2025."); ¶ 15 ("Defendant Resurgent Capital Services, L.P. is LVNV's servicer/agent and a 'debt collector.'"); ¶ 16 ("Defendant Johnson Mark LLC is a Utah law firm that prosecuted collections

for LVNV while LVNV was unregistered in Utah."), ¶ 92 ("Resurgent (serves as LVNV's exclusive servicing agent, managing and directing litigation); and Johnson Mark (prosecutes collection lawsuits in Utah courts)").

Accordingly, the privity requirement is established and this action is barred.

### 3. The Claims and Issues in the First Action and Second Action Are Identical to Plaintiff's Claims and Issues in the Instant Action

Third, there can be no doubt that the claims and issues in this federal action are identical to those resolved in the arbitrations. Indeed, in the First Action, Second Action, and instant action, Plaintiff raises identical issues and claims: (1) Defendants invok[ed] Nevada law when advantageous while ignoring Nevada's licensing obligations and litigating despite a mandatory arbitration clause, (2) Defendants pursued parallel litigation and arbitration to maximize procedural advantage while forcing Plaintiff to prosecute arbitration as claimant, (3) Defendants violated the FDCPA, (4) Defendants engaged in improper litigation conduct, and (5) Defendants failed to obtain proper licensure in Utah and Nevada. *See* FAC and **Exhibits D-E, K-N**.

Accordingly, like the First Action and Second Action, this lawsuit seeks relief based on the Defendants' purported improper licensure, collection activity, and litigation conduct.

### 4. Judgment Was Entered in Favor of LVNV In the First Action and Second Action After Plaintiff Had an Opportunity to Present His Case to Two Arbitrators

Finally, the parties had a full and fair opportunity to litigate the First Action and Second Action. The Tenth Circuit has held that when "parties have invested considerable time and resources arbitrating an issue identical to that before a court, and the arbitration panel clearly

articulates its findings on that issue, the court may consider this evidence that the parties intended the arbitration to have preclusive effect." *B-S Steel, 439 F.3d at 666*.

Here, in each of the underlying proceedings, Plaintiff submitted voluminous briefing to each respective arbitrator and was provided the opportunity to present arguments to the arbitrator. **Exhibits D-E, K-N**. Moreover, Arbitrators Timothy R. Pack and Langdon T. Owen, Jr., entered final reasoned arbitration awards in favor of LVNV and against Plaintiff. **Exhibits F and O**. Finally, the arbitration awards in each matter were also confirmed by Judges Roger W. Griffin and Denise M. Porter of the Fourth Judicial District, Provo District Court, Utah County. Thus, there is significant evidence that the parties intended the arbitrations to have preclusive effect.

Accordingly, there can be no dispute that Plaintiff was afforded a full and fair opportunity to litigate his claims in the First Action and Second Action.

## IV.     Conclusion

Based on the foregoing, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint in its entirety without leave to amend.

Dated this 6th day of March 2026.

STEELE ADAMS HOSMAN

/s/Chase A. Adams
Chase A. Adams
Attorney for Defendants

**Certificate of Service**

I hereby certify that on March 6, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Ross Logan
1174 S 200 E
Orem, UT 84058

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

                                                /s/Chase A Adams